**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DIVISION OF MISSISSIPPI
SOUTHERN DIVISION**

**RAY THOMAS GORE**                                                                **PETITIONER**

**v.**                                                   **CIVIL ACTION NO. 1:13cv488-KS-MTP**

**CHRISTOPHER EPPS &**                                                       **RESPONDENTS**
**JIM HOOD**

## REPORT AND RECOMMENDATION

BEFORE THE COURT is the Petition [1] of Ray Thomas Gore for writ of habeas corpus

pursuant to 28 U.S.C. § 2254. Respondents filed their Response [8] on July 23, 2012, and Gore filed

his Reply [13] on October 12, 2012. Having considered the submissions of the parties and the

applicable law, the undersigned recommends that the Petition [1] be denied.

## BACKGROUND

Petitioner Ray Thomas Gore was convicted of murder and sentenced to life in prison in the

Circuit Court of Scott County, Mississippi, on October 6, 2008.[1]  He is in the custody of the

Mississippi Department of Corrections and is currently incarcerated at South Mississippi

Correctional Facility. The facts of Gore's case are as follows.

Gore and Jacqueline Ford both lived in the Oakdale Apartment complex in Forest,

Mississippi. On February 7, 2008, Ford and her five-year-old son, Sonny, went to Gore's apartment,

where the three had dinner. Between 8:00 and 9:00 p.m., Ford left Sonny with Gore while she ran

an errand. While she was gone, a man named "Freddie" arrived at Gore's apartment, and remained

there after Ford returned. In the early morning hours of February 8, 2008, Freddie and Ford left

---

[1]*See* State Court Record ("SCR") [9-1] at 21-22.

Gore's apartment together, leaving Sonny behind. Around 3:40 a.m., Gore went to Ford's apartment, as she had not returned, to inform her that she needed to come to his apartment and get her son. Ford then walked to Gore's apartment. Although the nature of the incident was disputed at trial, it is uncontested that a confrontation occurred between Gore and Ford, and that Ford died due to a gunshot wound inflicted from a gun that Gore was holding.[2]

Gore immediately went for help, walking to neighbor Nicole Wright's apartment and stating: "Call 911 because I done [sic] shot Jackie." Ford's son had also left the apartment, going to the apartment of Brenda Leffingwell, the site manager for Oakdale Apartments. At trial, Leffingwell testified that Sonny was screaming and hysterical. When Leffingwell encountered Gore a few moments later, she asked where Ford was, to which Gore responded, "she's dead. I killed her. I shot her." When Forest Police Officer David McConnell arrived on the scene, Gore admitted that he had shot Ford, and that the gun could be found in his closet.[3]

On February 11, 2008, Gore was brought to the Forest Police Department for questioning. Gore was advised of his Miranda rights and signed a waiver. He then gave the following statement:

> [O]n Thursday around when school was out, Jackie came to my house with Sonny. We sat around and drank beer, then I cooked dinner. After we ate, we drank a little more. Around eight or nine Jackie left and went to the store. While she was at the store a guy named Freddie showed up and we drank some more. Jackie comes [sic] back from the store, and we drank more beer. Around 12:30 or 1:00 Jackie and Freddie left and went back to the store. They stayed gone for a while. I waited until about twenty minutes to four, and I went to her apartment to tell her to come get her son. When I got there, I knocked on the door, and she answered it. When she opened the door, she told me "we ain't doing nothing [sic]." I told her just to come get her child. I went back to my apartment. She came to get her child, and she started arguing with me. She walked to the kitchen to get a knife. I then went to the closet

---

[2]*See Gore v. State*, 45 So. 3d 662, 663 (Miss. Ct. App. 2010).

[3]*Id.* at 663-64.

and got this old gun out of it. I pointed it at her and hit the safety, and the gun went off. When the gun went off, I saw her fall, and I threw the gun back in the closet and went for help. I went to [Wright]'s house and told her to call 911. On my way back to the apartment [Leffingwell] and Sonny came up, and she asked me where did I shoot her. I told her in the head. We then went to the apartment and went inside, and I told [Wright] not to touch her then she left. I was walking back out of the apartment when the police showed up and put the cuffs on me.[4]

Gore was indicted on August 5, 2008, and went to trial on October 6, 2008. The jury found Gore guilty of murder the same day.[5] Additional facts concerning Gore's trial will be set forth more fully below.

Following his conviction, Gore filed a direct appeal to the Mississippi Supreme Court, raising the following issues:

(1)     Whether Petitioner was entitled to a manslaughter instruction, because there was some evidence in the record that the shooting was committed in the heat of passion;

(2)     Whether Petitioner was entitled to a circumstantial evidence instruction, because Petitioner claimed the shooting was an accident and did not confess.[6]

The Mississippi Court of Appeals examined these issues on the merits and affirmed Gore's conviction and sentence by written opinion on December 1, 2009.[7] Gore's request for rehearing was

---

[4]Investigator Jones read Gore's statement into evidence at trial. *See* SCR, Trial Transcript [9-2] at 117-18. In his Petition [1], Gore argues that the statement itself was incorrect, and that he never intended to present a self-defense theory at trial. He argues that he cannot read or write, and that the statement should not have been considered. However, it was made abundantly clear at trial that Gore's statement was read back to him before he signed it. He was also allowed an opportunity to read whatever words he could spell. *Id.* at 107.

[5]*See* Gore, 45 So. 3d at 664-665.

[6]*See* SCR, Brief for Appellant [9-3] at 21, 22.

[7]*Gore v. State*, 45 So.3d 662 (Miss. Ct. App. 2009), *reh'g denied* April 20, 2010.

denied on April 20, 2010.[8] The Mississippi Supreme Court granted certiorari on July 22, 2010,[9] but certiorari was later dismissed as improvidently granted on October 14, 2010.

Gore filed his Application for Post-Conviction Relief, or, in the alternative, for Leave to Proceed in the Trial Court on Motion to Vacate Judgment and Sentence in the Mississippi Supreme Court, on October 14, 2011.[10] Therein, Gore asserted the following grounds for relief, as stated by Gore:

> (1) Despite the fact that Gore centrally argued at trial that the shooting at the center of his case had been an accident, his trial attorneys failed to tender any jury instructions embodying Gore's theory of the case;
>
> (2) Although Gore insisted that the aged rifle that fired the fatal shot went off accidentally, his trial attorney did not submit the gun for expert review to determine whether its deteriorated condition left it prone to untriggered discharges;
>
> (3) In the face of trial counsel's blatant failure to submit a jury instruction on Gore's theory of the case, Gore's attorney on appeal performed ineffectively when his four-page brief failed to register an assignment of ineffective assistance by Gore's trial counsel; and
>
> (4) The trial judge should have granted an accident-and-misfortune instruction, *sua sponte*, after neither the defense nor the State submitted such an instruction, when the trial judge knew there was evidence supporting such an instruction, and the accident-and-misfortune theory was Gore's sole theory of the case.[11]

The Mississippi Supreme Court denied the application without written opinion on January 27, 2012.[12]

---

[8]*Id.*

[9]*Gore v. State*, 39 So. 3d 5 (Miss. 2010)

[10]*See* Application, SCR [9-4] at 7-8.

[11]*Id.* at 7-8; Petition [1] at 3.

[12]Order, SCR [9-4] at 2.

Gore filed the instant petition on April 25, 2012, stating identical grounds for relief as were asserted in his collateral proceeding before the Mississippi Supreme Court.[13]

## ANALYSIS

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless that adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[14]

28 U.S.C. § 2254(d). Federal courts review pure questions of law, as well as mixed questions of law and fact, under subsection (d)(1). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). For purposes of subsection (d)(1) analysis, "unreasonable" does not equate with "incorrect," *Garcia v. Dretke*, 388 F.3d 496, 500 (5th Cir. 2004), nor may a federal court grant habeas relief based on a mere

---

[13]*See* Petition [1].

[14]As a threshold matter, this Court must first determine whether the state court adjudicated Gore's claims on the merits, and therefore to determine whether to apply the standards of Section 2254(d). Federal courts presume that a claim is adjudicated "on its merits" if it has been presented to a state court and then denied absent an indication of reliance upon state procedural law. *Harrington v. Richter*, 562 U.S. 86, 98-99 (2011). A state court does not need to give an opinion or a statement of reasons for the denial. *Id.* Consequently, a state court summary ruling is an "on the merits" adjudication for Section 2254 purposes. *Id.* Gore's application for post-conviction relief to the Mississippi Supreme Court was denied in a one-page order on January 27, 2012, with the following language: "After due consideration, the panel finds that the petition should be denied." *See* Order [1-8]. For the reasons outlined above, the undersigned finds that the Mississippi state court ruling was an adjudication on the merits, and Section 2254(d) applies.

disagreement with the state court decision. *Williams v. Cain*, 125 F.3d 269, 276-77 (5th Cir. 1997).

Pure questions of fact are reviewed under subsection (d)(2). *Corwin v. Johnson,* 150 F.3d 467, 471

(5th Cir. 1998). Determination of a factual issue made by a state court is entitled to a presumption

of correctness which the petitioner has the burden of rebutting by clear and convincing evidence.

28 U.S.C. § 2254(e)(1); *see also Schriro v. Landrigan*, 550 U.S. 465, 474-74 (2007). Federal courts

may decide the issues presented by the habeas petition "only to the extent that federal constitutional

issues are implicated." *Smith v. McCotter*, 786 F.2d 697, 700 (5th Cir. 1986).

Ineffective Assistance of Counsel

Gore asserts that his trial counsel was ineffective for failing to request an accident and

misfortune jury instruction pursuant to Mississippi Code § 97-3-17, and for failing to call an expert

witness to examine the murder weapon. He also alleges that his appellate counsel was ineffective

for failing to raise these ineffective assistance of trial counsel claims on direct appeal.

In *Strickland v. Washington*, the United States Supreme Court defined the standard by which

an ineffective assistance of counsel claim in a habeas proceeding is to be measured: the petitioner

must show that (1) "that counsel's performance was deficient" and (2) "that the deficient

performance prejudiced the defense." 466 U.S. 668, 687 (1984). The deficiency prong requires a

defendant to show that his "counsel's representation fell below an objective standard of

reasonableness." *Id.* at 688. Courts indulge a "strong presumption" that counsel's actions "might be

considered sound trial strategy." *Id.* at 689.

The prejudice prong of the *Strickland* test requires the defendant to "affirmatively prove"

prejudice. *Bonvillain v. Blackburn*, 780 F.2d 1248, 1253 (5th Cir. 1986) (citing *Celestine v.

Blackburn*, 750 F.2d 353, 356 (5th Cir. 1984)). Defendant must "show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*   It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.

In reviewing the application of the *Strickland* standard in the context of a Section 2254 petition, the United States Court of Appeals for the Fifth Circuit has held:

> It bears repeating that the test for federal habeas purposes is not whether [the petitioner] made [the *Strickand*] showing. Instead, the test is whether the state court's decision – that [the petitioner] did not make the *Strickland* showing–was contrary to, or an unreasonable application of, the standards provided by the clearly established federal law (*Strickland*), for succeeding on his IAC claim.

*Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003). "Surmounting *Strickland*'s high bar is never an easy task" and "establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Premo v. Moore*, 562 U.S. 115, 122 (2011) (internal quotations and citations omitted). "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under  § 2254(d)." *Id.* Under § 2254(d), the court must ask "whether there is any reasonable argument that counsel satisfied S*trickland*'s deferential standard." *Id.* at 123.

*Failure to Request Accident and Misfortune Instruction*

Gore alleges that his trial counsel was ineffective in failing to request an "accident and misfortune" jury instruction pursuant to Miss. Code § 97-3-17. Section 97-3-17 provides:

> The killing of any human being by the act, procurement, or omission of another shall be excusable:

> (a) When committed by accident and misfortune in doing any lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent;

(b) When committed by accident and misfortune, in the heat of passion, upon any sudden and sufficient provocation;

(c) When committed upon any sudden combat, without undue advantage being taken, and without any dangerous weapon being used, and not done in a cruel or unusual manner.

The Mississippi Supreme Court has held that a defendant is entitled to jury instructions that present his theory of the case; this entitlement, however, is limited in that a trial court may refuse an instruction that incorrectly states the law or is without foundation in evidence. *See Chinn v. State*, 958 So. 2d 1223, 1225 (Miss. 2007). Gore argues that testimony was elicited at trial implying that the gun discharged accidentally without his intent, and that he was thus entitled to an accident instruction.

The possibility that Ford's death was the result of an accident was briefly alluded to several times throughout Gore's trial. State witness David McConnell, an officer with the Forest Police Department, testified that he was the first officer on the scene on the day of Ford's death.[15] He also testified that upon his arrival, Gore stated "that no one else was in the apartment and that he had shot her."[16] On cross-examination, defense counsel Shawn Harris asked:

Q: And from that [statement], you didn't – you couldn't deduce whether – whether it was done intentionally or accidentally or in self-defense or anything. Right?

A: No, sir.[17]

Next, State expert witness Dr. Steven Hayne, the pathologist who performed Ford's autopsy, gave testimony regarding the cause of Ford's death, and explained he had classified the death as a

---

[15]*See* SCR, Trial Transcript [9-2] at 60.

[16]*Id.* at 67.

[17]*Id.* at 70.

homicide.[18] On cross-examination, defense counsel James Smith further questioned Dr. Hayne about the cause of Ford's death:

> Q: Could you define homicide for the jury?
>
> A: Homicide's taking the life by one party of another human being. I do not rule if it's murder, I do not rule if it's justifiable or non-justifiable, those are jury questions, not a pathologist question.
>
> Q: And it could also be an accident?
>
> A: No, sir.
>
> Q: It could not be an accident?
>
> A: I – I ruled– uh – against that. The six possibilities of which I have to choose would include accident, homicide, suicide, natural, pending, and undetermined.[19]

State witness Will Jones, an investigator with the Forest Police Department, testified that he found the gun that killed Ford and performed an examination of the weapon.[20] He testified that the spent shell casing did not properly eject from the gun after it was fired, possibly indicating that there was a problem with the shell extractor.[21] Defense counsel Shawn Harris asked the following questions on cross-examination:

> Q: Okay. Uh – if – but we can agree that at least one aspect of his gun is not functioning. Right? Is that correct?
>
> A: The shell extractor possibly is not functioning correctly.
>
> Q: And have you known of situations where guns have gone off – by mechanical mistake?

---

[18]*Id.* at 83.

[19]*Id.* at 83-84.

[20]*Id.* at 86-92.

[21]*Id.* at 124.

A: I can't recollect any specific instances. No, sir.[22]

Finally, Vonda Tullos appeared as a character defense witness, and gave the following testimony on cross-examination:

Q: But you're not here saying that he didn't shoot Jacqueline Ford. Are you?

A: I wouldn't think he would – it would – it wasn't on purpose. It might have been an accident, but I – he's never been anything like that toward us.[23]

At the jury instruction conference, defense counsel did not submit an accident and misfortune instruction. Defense counsel's request for a circumstantial evidence instruction was denied;[24] however, Gore did receive a self-defense instruction.[25]

As an initial matter, Gore's allegation that his "sole theory of defense" was that Ford was killed by accident is plainly incorrect.[26] As outlined below, trial counsel pursued the theory of self-

_____

[22]*Id.*

[23]*Id.* at 132.

[24]*Id.* at 137.

[25]*Id.* at 138. Gore states that the accident and misfortune defense was mentioned several times in the jury instruction conference. In the conference, defense counsel Smith stated, in regard to the circumstantial evidence instruction, that "there is direct evidence that my client had his hand on the gun when . . . the gun was fired, however, there is circumstantial evidence as to whether it was murder or self-defense or [accident and] misfortune." *Id.* at 137. Also during the jury instruction conference, the trial judge made the following statement: "The only evidence in this case is deliberate design or [accident and] misfortune. *Id.* at 135. Finally, Gore argues that he told defense counsel that Ford's death was the result of an accident prior to trial. *See* Petition [1] at 4-5; Affidavit [1-2]. Gore claims that these statements "should have reminded [counsel] of their duty to promote that theory through a jury instruction." *See* Petition [1] at 14. However, words spoken in chambers during a jury instruction conference, or in a pre-trial conference, cannot serve as a basis for a jury instruction. Mississippi law clearly states that only testimony and physical items properly entered into evidence may entitle a defendant to a particular jury instruction. *See Chinn*, 958 So. 2d at 1225.

[26]*See* Petition [1] at 9.

10

defense throughout the trial, and focused almost entirely on that theory during closing arguments.

Petitioner relies heavily on *Chinn v. State* to support his claim that his trial counsel's failure to request an accident and misfortune instruction constituted a constitutional violation. 958 So. 2d at 1223.  In *Chinn*,  the defendant claimed that he and his wife were struggling for a gun when it discharged, resulting in the death of his wife. *Id.* at 1224. At trial, the defense did not call any witnesses. *Id.* at 1225. However, on cross-examination of the State's witnesses, defense counsel elicited testimony  that the victim's death could have been the result of an accident. *Id.* at 1224-26. The trial court denied the defendant's request for jury instructions that tracked the accident and misfortune language in Mississippi Code § 97-3-17. *Id.* at 1225. On appeal, the Mississippi Supreme Court reversed Chinn's conviction, holding that there was sufficient evidence to support an accident and misfortune instruction and that Chinn "was entitled to have his theory of the case submitted to the jury." *Id.* at 1226-27.

Significant differences lie between *Chinn* and the instant case. First, the issue of the accident and misfortune instruction in *Chinn* was raised independently and on direct appeal. In this case, the issue must be examined through the additional lense of an ineffective assistance of counsel claim, and is before the Court on a federal habeas petition. Thus, the question before this Court is not whether Gore was entitled to an accident and misfortune instruction at trial; rather, this Court must determine whether the Mississippi Supreme Court reasonably applied the *Strickland* standard in determining that Gore's counsel was not ineffective for failing to request the instruction. Second, the defense counsel in *Chinn* requested and was denied an accident instruction, whereas Gore's trial

11

counsel made the choice not to pursue the instruction.[27] As explained below, such a decision could simply be a matter of trial strategy expressly allowed under *Strickland*.

In *Strickland*, the United States Supreme Court held that in order to prevail on an ineffective assistance of counsel claim, "[a] defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." 466 U.S. at 689 (internal citations and quotations omitted). *Strickland* requires a reviewing court not simply to give a defense attorney the "benefit of the doubt," but to "affirmatively entertain" the range of possible reasons he may have had for proceeding as he did. *Feldman v. Thaler*, 695 F.3d 372, 382 (5th Cir. 2012).

Even if the undersigned were to find that Gore was entitled to an accident or misfortune instruction, his counsel's failure to request such an instruction could have been a matter of trial strategy. Although Gore's counsel undoubtedly contemplated several theories of defense, by the end of the trial it appeared that counsel wished to focus on self-defense. Defense counsel Shawn Harris counsel gave the following statement in closing argument:

> You know, there are several reasons why a killing is justified for various defenses a person can have. Self-defense is one of those . . . . Mr. Gore's not charged with having held the weapon that fired – that killed Ms. Ford. He's charged with forming the intentional act to take her life without justification. And that's what y'all are here faced with today. Did Mr. Gore form that act in his mind to take her life and it was unjustified when he did it? If you believe from the evidence that – that he – that she was advancing on him with a knife, that he was in fear for his life, he had a right to defend himself.[28]

---

[27]Other Mississippi Supreme Court cases cited by Gore also involve direct appeals in which defendants affirmatively requested accident instructions and were denied. *See Brown v. State*, 39 So. 3d 890 (Miss. 2010); *Miller v. State*, 677 So. 2d 726 (Miss. 1996); *Triplett v. State*, 666 So. 2d 1356 (Miss. 1995); *O'Bryant v. State*, 530 So. 2d 129 (Miss. 1988).

[28]*See* SCR, Trial Transcript [9-2] at 146-47.

Harris did not mention the possibility that Ford's death was the result of accident, or any other theory

of defense in his closing argument. Defense counsel James Smith made the following remarks in his

portion of closing argument:

> That there was a – Ms. Jacqueline Ford died and – [sic] as a result of the incident that happened in Ray Gore's apartment. That's not at issue in this case. What is at issue is how did all of this happen. Now, the State has left an instruction of S-6 that talks about self-defense. They've introduced this instruction and the defense introduced D-7 I believe it is [sic] also talks about self-defense. Now, if you read Ray Gore's statement, which is the only statement you have . . . . he says she went into the kitchen to get a knife, and he grabbed the gun from the closet, and then hit the safety and the gun went off.[29]

As reflected in closing arguments, the theory presented to the jury was that Gore killed Ford

in self defense. Specifically, defense counsel argued that Gore fired the gun at Ford as she advanced

towards him with a knife. While Gore's counsel did elicit testimony during the trial suggesting that

Ford's death was an accident, as outlined above, counsel focused on the theory of self-defense in

their closing statement and offered jury instructions on self-defense.[30] Counsel might have

reasonably feared that pursuing multiple defense theories posed too great a risk of confusing the

jury–or that  doing so would render Gore's self-defense theory insincere, or even contradict it. In

any event, the decision to pursue one avenue of defense as opposed to another is attributable to an

array of trial strategies. *See Strickland*, 466 U.S. at 689; *cf. Miller v. Waller*, No. 2:02cv61-DMR-

RHW, 2006 WL 1586551, at *5 (S.D. Miss. March 27, 2006) ("Given counsel's defensive theory

as presented to the jury, it was a permissible exercise of trial strategy not to request a manslaughter

---

[29]*Id.* at 144-45.

[30]As previously mentioned, defense counsel requested a self-defense instruction, but chose not to request an accident instruction.

instruction.").

Furthermore, Gore has not satisfied *Strickland*'s "prejudice" prong. Gore must show that his trial counsel's failure to request the accident instruction "undermine[d] the confidence in the outcome" so that the "trial cannot be relied on as having produced a just result." *Strickland* 466 U.S. at 694. The United States Supreme Court has held that when considering a jury instruction issue in a collateral proceeding, "[t]he significance of the omission of . . . an instruction may be evaluated by comparison with the instructions that were given." *Henderson v. Kibble*, 431 U.S. 145, 156 (1977). In the instant case, the elements of Gore's offense are that he killed a human being with **"deliberate design to effect the death of a person killed**."[31] The trial court instructed the jury that "deliberate design" meant "[the] intent to kill, without the authority of law."[32]

By returning a guilty verdict, the jury necessarily found, in accordance with this instruction, that Gore acted "with deliberate design to effect the death" of Jacqueline Ford. A person who acts with "deliberate design to effect the death of a person killed" does not also bring about the death of that person by accident. Thus, the jury's determination that the Gore acted with "deliberate design" and "intent to kill" necessarily included a determination that Ford's death was not the result of an accident.

Accordingly, for these reasons, the undersigned finds that the Mississippi Supreme Court's application of *Strickland* to these facts was not contrary to, or an unreasonable application of, clearly established federal law.

*Failure to Call an Firearms Expert to Examine the Weapon*

---

[31]*See* Miss. Code Ann. § 97-3-19 (emphasis added); SCR, Transcript [9-2] at 138.

[32]*Id.* at 139.

Gore asserts that his trial counsel was ineffective for failing to request that the gun be examined by a forensic expert in order to determine if it could have discharged accidentally. He also argues that counsel's decision not to seek a firearms expert constituted a failure to pursue a reasonable investigation.

Under *Strickland*, a counsel has a duty "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "[C]ounsel has a duty to interview potential witnesses and to make an independent investigation of the facts and circumstances of this case. Under this standard, counsel may be deemed ineffective for relying almost exclusively on material furnished by the State during discovery and conducting no independent investigation." *Ross v. State*, 954 So. 2d 968, 1005 (Miss. 2007).

However, as outlined above, *Strickland* also provides that "[a] defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal citations and quotations omitted). Gore's trial counsel clearly made the decision to pursue a theory of self-defense, and also argued that the State had failed to meet its burden of proof. Defense counsel James Smith made the following statements during his closing argument:

> It is an old gun; bolt action, single shot. Will Jones said that the bullet – the shell casing is still in the gun. Now, every bolt action rifle I've been around, when you pull it back, it ejects the shell casing. This shows that the gun is damaged. Now, for $50.00 they could have sent the gun to the crime lab and had it – had it looked at and to see if it really was damaged, but they chose not to do that. Remember at the beginning of this trial, I said it's not – that Ray Gore doesn't have to prove anything. It's all for the State. And this is where reasonable doubt comes into mind.[33]

Gore's counsel also questioned State witness Will Jones about the condition of the gun, eliciting

---

[33]*Id.* at 145.

testimony that the gun was in a state of deterioration and that it might not have been working properly.[34] The gun was also brought into the courtroom, allowing the jury to observe its condition.

As noted by the Respondents, Gore's trial counsel tried to use the fact that the gun had not been examined to his advantage, implying that the State had not exercised due diligence in its investigation of Ford's death.[35] The strategic  decision not to call an expert witness is well within the bounds set forth by *Strickland.* Furthermore, the undersigned finds that the result of any such examination or the testimony that might have been presented at trial is too speculative to form the basis for federal habeas relief. *See Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001) ("Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative."); *see also Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (holding that petitioner was required to demonstrate "that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

Finally, Gore does not argue that his trial counsel failed in all respects to make an investigation of Ford's death or to explore all possible defenses, only that they failed to retain an expert to examine the weapon that fired the fatal shot. "[C]ounsel is not required to exhaust every conceivable avenue of investigation." *See Ross*, 954 So. 2d at 1005. For these reasons, the undersigned finds that the Mississippi Supreme Court's determination that Gore's trial counsel was not ineffective under *Strickland* was not contrary to, or an unreasonable application of, clearly

---

[34]*Id.* at 124.

[35]*See* Response [8] at 19.

established federal law.

*Failure of Appellate Counsel to Raise Ineffectiveness of Trial Counsel Claim*

Gore argues that his appellate counsel was ineffective under *Strickland* for failing to raise the ineffectiveness of his trial counsel on direct appeal. As outlined above, the *Strickland* standard is applied to appellate counsel as well as to trial counsel. *Henderson v. Quarterman*, 460 F.3d 654, 665 (5th Cir. 2006).  Because the undersigned has concluded that Gore's trial counsel was not deficient under *Strickland*, his appellate counsel was not ineffective for failing to raise such arguments on direct appeal. *See Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point."). Accordingly, the undersigned finds that the Mississippi Supreme Court's application of *Strickland* to this claim was not contrary to, or an unreasonable application of, clearly established federal law.

Trial Court Failure to Give an Accident and Misfortune Instruction *Sua Sponte*

Finally, Gore argues that the state trial court judge erred in failing to submit an accident and misfortune jury instruction *sua sponte*, violating Gore's right to due process under the Fourteenth Amendment. He asserts that "when it became apparent that neither Petitioner's trial counsel nor the State was going to offer an accident-and-misfortune instruction to the jury, it was incumbent upon [the trial judge] himself to submit this instruction to the jury."[36]

 Improper jury instructions in a state criminal trial do not generally form the basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991); *Gilmore v. Taylor*, 508 U.S. 333, 343-44 (1993). The fact that a jury instruction was incorrect under state law does not entitle a petitioner to federal habeas relief. *Id.* at 342. In the context of a request for habeas relief on erroneous

---

[36]*See* Petition [1] at 26-27.

instruction grounds, the Supreme Court has observed as "well established" that challenged jury instructions "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72. The relevant inquiry is whether the failure to give an instruction "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Mayabb v. Johnson*, 168 F.3d 863 (5th Cir. 1999) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of law." *Id.* at 155 ("In this case, the [Petitioner's] burden is especially heavy because no erroneous instruction was given . . . ."). "The significance of the omission of . . . an instruction may be evaluated by comparison with the instructions that were given." *Id.* at 156.

The undersigned notes that under Mississippi law, "[a] trial court is not required to *sua sponte* instruct the jury or suggest jury instructions in addition to what the parties tender." *Wilson v. State*, 936 So. 2d 357, 363 (Miss. 2006) (citing *Conner v. State*, 632 So. 2d 1239, 1254 (Miss. 1993) (overruled on other grounds)). "A trial court cannot be held in error for not giving an instruction that was never requested." *Neal v. State*, 15 So. 3d 388, 409 (Miss. 2009).

Furthermore, the undersigned finds that the trial judge's failure to give an accident instruction did not "so infect the entire trial that the resulting conviction violates due process." *Cupp*, 414 U.S. at 147. As previously mentioned, the instructions given at Gore's trial defined murder as the killing of another with "deliberate design" and with the "intent to kill."[37] Information elicited at trial did not leave the jury uninformed regarding the potential defects in the State's theory that Gore killed Ford intentionally. The jury heard testimony implying that Ford's death was an accident, and

---

[37]SCR, Trial Transcript [9-2] at 133-39.

that the gun discharged without Gore's intent. By returning a guilty verdict–after being instructed that to do so would require them to find that Gore fired the gun with deliberate design to effect Ford's death–the jury necessarily found that Gore did not fire the gun by accident. *See Henderson*, 431 U.S. at 156 ("But since it is logical to assume that the jurors would have responded to an instruction [that was not given] consistently with their determination of the issues that were comprehensively explained, it is equally logical to conclude that such an instruction would not have affected their verdict.").

In light of the testimonial evidence taken together with the jury charge, the undersigned concludes that the failure of the trial judge to give an accident instruction *sua sponte* did not deprive Gore of his due process rights. Accordingly, the undersigned finds that the Mississippi Supreme Court's determination that this ground did not warrant habeas relief was not contrary to, or an unreasonable application of, clearly established federal law.

Additional Requests for Relief

 Scattered throughout the Petition are additional requests for relief, described and addressed as follows.

*Requests to Supplement Argument*

Gore requests the Court to grant him permission to file supplemental memorandums of law in order to fully develop his claims.[38] However, Gore fails to specifically identify the arguments that he would make, or provide any reason why these arguments could not have been made at the time the petition was filed. In addition, the undersigned notes that Gore was given an opportunity to brief additional issues in his Response [13], but failed to do so. For these reasons, Gore requests to

---

[38]*See* Petition [1] at 18, 23, 26, 28.

supplement his Petition should be denied.

*Request for an Evidentiary Hearing*

Gore requests an evidentiary hearing "as to claims not fully developed on the trial, appellate and state post-conviction records."[39] Respondents address this issue in the Response [8], and argue that Gore is not entitled to a hearing.

28 U.S.C. § 2254(e)(2) sets forth the standard for granting evidentiary hearings on federal habeas petitions, and provides in the pertinent part:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on this claim unless the applicant shows that –
>
> (A) the claim relies on –
>
> > (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (II) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (b) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

In this case, Gore does not assert a new rule of constitutional law applicable to his case or identify any factual predicate that was previously undiscoverable. Even if Gore were to establish some defect with either the gun or his jury instructions, it would only serve to provide him with an alternative theory of defense, which falls far short of establishing by clear and convincing evidence that no reasonable factfinder would have found Gore guilty of murder. *Id.* In fact, as outlined above,

---

[39]*Id.* at 31.

an accident instruction would have likely undermined or contradicted Gore's main theory of self-defense. Finally, the Respondents asserted arguments against an evidentiary hearing in the Response [8], and Gore has offered no arguments in rebuttal. Accordingly, Gore's request for an evidentiary hearing should be denied.

*Discovery Request*

Gore requests leave from this Court in order to seek the assistance of a firearms expert to "make the determination regarding the gun's capacity for accidental discharge."[40]   He cites no authority and offers no arguments in support of the request.

Rule 6 of the Federal Rules Governing Section 2254 Petitions provides: "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Good cause may be found when a petition for habeas corpus relief "establishes a prima facie claim for relief." *Harris v. Nelson*, 394 U.S. 286, 290 (1969). "[W]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the courts to provide the necessary facilities and procedures for an adequate inquiry." *See Murphy v. Johnson*, 205 F.3d 809, 814-15 (5th Cir. 2000) (citing *Gibbs v. Johnson*, 154 F.3d 253, 258 (5th Cir. 1998), *cert. denied*, 526 U.S. 1089 (1999). Rule 6 does not "authorize fishing expeditions." *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994).

Gore states that the gun involved in Ford's death was old and dilapidated, but his allegations that the gun misfired, and that additional facts to this effect would have altered the result of his trial, are based on mere speculation. An examination of the gun would, at most, support an alternate

---

[40]*Id.*  at 23.

theory of defense.  As outlined above, the theory that Ford's death was an accident would conflict with the trial strategy that was chosen by Gore's counsel. Thus, any facts developed would not demonstrate that Gore is entitled to relief, and his request for leave to conduct discovery should be denied. *Id.*

*Request for Summary Judgment*

Finally, Gore requests summary judgment of the writ of habeas corpus under 28 U.S.C. § 2254 vacating his conviction and sentence.[41]

"As a general principle, Rule 56 of the Federal Rules of Civil Procedure applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000) (citing Rule 11 of the Rules Governing § 2254 Cases). To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56.

As the undersigned has found that Gore's petition does not entitle him to habeas relief, his request for summary judgment on identical grounds should likewise be denied for the reasons given above.

## RECOMMENDATION

For the reasons stated above, the undersigned recommends that Gore's petition for writ of habeas corpus be dismissed with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the

---

[41]*Id.* at 31.

recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS, the 18th day of May, 2015.

s/ Michael T. Parker
United States Magistrate Judge